## Peters's Estate.

Argued May 3, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, MAXEY, DREW and LINN, JJ.

*Arthur T. Gillespie,* for appellant.

*Francis J. Gildner,* for appellee.

Opinion by Mr. Justice Linn, June 30, 1933:

In the distribution of the estate of Ambrose Peters, deceased, his son Philip, the appellant, claimed a one-seventh share, worth, at the audit, $21,442.40. The Penn Trust Company (here called the bank) claimed it by assignment from appellant as security for the payment of certain notes made by one Schreiber, payable to Burinot and another. These notes had originally been given in payment of Florida real estate and were secured by mortgages on land conveyed. Before maturity, the bank became holder of the notes in due course, and also the mortgages, paying their face value as follows: $25,000 by delivering a certificate of deposit in that sum to Burinot; and by paying $66,000 for the account of Peters, appellant, in consideration of which he made the assignment of his share of his father's estate. The balance due on the notes exceeds the value of appellant's share in the estate.

Notwithstanding default at maturity of some of the notes, the bank paid to Burinot the amount of the certificate of deposit. There was no agreement that the deposit should be held as security for the notes. But appellant contends that, by that payment, the bank forfeited its right to the security of the assigned property; that it had no right to honor its certificate of deposit, but should have applied it in reduction of the amount due on Schreiber's notes; that failure so to pay itself on account, released appellant of his obligation as surety. It will be observed that the deposit was the property of the certificate holder, Burinot, and not of Schreiber, maker of the notes; the bank owed Schreiber nothing.

The deposit was due by the bank to one not primarily liable to the bank on the notes.

Appellant claims on the theory that Burinot had negotiated and endorsed the notes to the bank and was "the principal debtor"; that (in the words of his brief) "Where at the time of default in payment by a principal debtor, the creditor bank is indebted to the principal debtor on a certificate of deposit, the creditor bank cannot thereafter, while unpaid, pay the amount due on the certificate of deposit to the principal debtor and then hold the surety for the payment of the principal's debt." But that statement is not in accord with the facts, which have been recited. The principal debtor was Schreiber. Burinot's obligation arises out of his endorsement. Appellant asks that we enlarge the familiar rule requiring a bank to apply the deposit of the maker in liquidation of his note at maturity, in relief of the endorser (see Bank v. Peltz, 176 Pa. 513, 35 A. 218, and cases considered in that opinion, and Franklin Savings and Trust Co. v. Clark, 283 Pa. 212, 129 A. 56). No reason is suggested for enlarging the rule; on the contrary, it may be noted, that in some jurisdictions a bank is not required to charge the account of the principal debtor in relief of the endorser or surety.*

In Bank v. Peltz, supra, we said "......the duty of the bank to appropriate has not been carried by any case beyond the deposit of the maker. Nor is it desirable that it should be. On the face of the paper the maker is the party to pay, and while the bank may upon dishonor secure payment from the deposit of any party liable to it, yet there is great force in the reasons for limiting its duty to do so to the party legally answerable in the first instance on the face of the paper. The rule thus rests on a liability fixed by law and capable of immediate and conclusive determination by the evidence of the note itself. Otherwise, it is thrown open to contest on the

---

* See cases cited in 3 R. C. L., section 226, n. 13 et seq.; 7 C. J., page 657, section 356, n. 18.

private arrangements of parties, to questions of notice and proof, and to all the uncertainties of the final ascertainment of the facts. While money deposited becomes the property of the bank, yet that result flows from the nature of money, which is to be measured by amount and not by physical identity. Hence a deposit of $100 is returned by another $100 without regard to the identity of the notes, or the coin, because legally they are the same. Except for this characteristic a deposit of money to be returned on demand would be, like the deposit of any other article, a mere bailment. But though for this reason the title to money deposited passes to the bank, yet the whole business of banking is founded on the faith of the immediate availability of the deposit, as money, for the use of the depositor, and any rule that interfered with the freedom of action of either bank or customer, by compelling a stop of their dealings with each other to examine the relations of other parties to the deposit would go far towards destroying that instant convertibility which is the essence of the business."

Judgment affirmed, costs to be paid out of the fund.